Mr. Murphy. Good morning, members of the court and distinguished counsel, and welcome Judge Duffy. This case has some relationship to New York, so it seems very appropriate.  I understand, sir, and you're at bat now, and may it please the court. We had been invited to submit letter briefs, and the briefing on those was simultaneous, so I did not have an opportunity to respond to the brief that was submitted by the defendant. And I'd like, I believe, to devote a substantial part of my time to responding to an argument that was raised in that letter brief for the first time, which is a waiver argument. And the defendant appears to be saying that because when I first appeared before Judge Breyer in the district court on this matter, I recognized for purposes of argument that the injunction that had been issued in New York by Judge Bernstein, the presiding judge of bankruptcy court there, that that was an injunction that he had the power to issue. There is no waiver I submit to the court that's involved in recognizing the power of one court to issue an order. The question was then, and to a lesser extent now, is what did the order mean? The interpretation of the order that was being advocated by defendant was that Mr. Osanich's claim was totally prohibited by it and could not proceed and therefore should be dismissed. And Judge Breyer took that same, adapted that same point of view as was offered to him by the defendant, Marconi. That, we said from the start, regardless of the power of the court, was the wrong interpretation of its order. The correct interpretation of its order was the one that we finally went to New York and obtained. Okay. Mr. Murphy, the question that we ask is one that still I don't think has a satisfactory answer to it, and that is what effect, if any, do the subsequent proceedings, that is, the intervening proceedings in the Southern District, have on this appeal? Well, I think that ---- Okay. I think I can address that. I know I can address that, and here's the way I do it. Section 304 is, of course, a defunct. It's been replaced. But as it stood at the time, it permitted an injunctive order to be issued by the bankruptcy court in assistance of a scheme of reorganization such as Marconi entered in London. That's well understood, and we all accept that Congress has the power to give such authority to a bankruptcy judge. The question is, what does the bankruptcy judge's order mean when it's issued, and is it the same as a Section 362 stay? Well, I've argued that it's very similar, and that it's very broad, and that if you look at that order that was issued by Judge Bernstein on its face, it even prohibited Mr. O'Sanich's attorney, that's me, from appearing before Judge Breyer to defend against the removal. And that's why I said to Judge Breyer, Judge, I brought my toothbrush today, because in fact, under the language of the order interpreted most broadly on its face, it said, you can't do anything. And, of course, that's not something that passes due process muster. So what did the order mean? What the order meant was what Judge Bernstein meant it to mean, and what Judge Bernstein's subsequent order informs us is what he meant it to mean. So we can look to what Judge Bernstein's ‑‑ Well, then why aren't you ‑‑ why isn't the appropriate remedy for you to go back into Judge Breyer's court and have him reconsider his ruling? I think it's too late. Why? Well, I could say because it's just as easy as I stand here this morning for me to ask you all to remand to him and vacate that dismissal and say, you know, Judge, we respect your interpretation and reading of this order, but you acted too fast because what should have happened, the sequence that should have occurred is, first, there never should have been a removal. What should have happened is the defendant Marconi should have gone to New York to Judge Bernstein and said, Judge, issue an OSC. We have become aware of this case in California that violates your order. And then there would have been a service and an appearance and we would have gone to New York and we would have said, oh, no, Judge Bernstein, it doesn't violate your order because you never, the defendant never served the order on us as the order required be done. So we never had any notice of it and it's not effective as to us. And that's, in fact, what Judge Bernstein eventually held. But we would have had that OSC hearing in New York. It would have been disposed whether or not the case was prohibited. And then if it was disposed that the case was not prohibited, as it finally turned out, it was not prohibited. It was never prohibited. It isn't prohibited now and it wasn't prohibited before Judge Bernstein clarified that it isn't prohibited by his order. Nothing changed. He merely said, look, you're wrong. This is what I meant. And so if the case isn't prohibited, then removal could be taken. And the cases indicate the tolling of the case. But I understand what he did. He said, look, you've convinced me that you don't have, you didn't have notice. That's true. He didn't make an interpretation if you had had notice of whether it applied or not. That's right. And there wasn't a pitch made to Judge Breyer, I don't think. On that footing, the pitch made to Judge Breyer was that the order just didn't apply for a whole lot of reasons. And Judge Breyer said, wait a minute, that's not my problem. Take that issue to the court with jurisdiction over the 304 proceeding, which is what happened. Well, I thought my transcript was pretty clear on that. And I'm quickly paging for it now, but it's quoted all over the place in the record. And I said, look, Judge Breyer, we're, in effect, ahead of the stay. We can't do anything until this stay. I completely agree with you that that was the argument that you made. Yeah. And what I was trying to say then and now is that this stay, as the defendant is offering its interpretation, and as you, Judge Breyer, apparently proposed to interpret it, can't be sold. Because if that's the interpretation, then what it means is the plaintiff can't do anything, not even appear to defend the removal. And it can't be that broad. And so we went to get that clarification, and we did. I really think, and I'm running short on time, but I would just ask the court here to really think about putting something in its decision about when it is that the defendant is allowed to remove when a stay, whether it's a 362 stay or an old 304-type injunctive stay. When that's in place, it makes no logical sense for the defendant to be able to remove if, in fact, it's time to remove his tolling. The purpose of the tolling, I submit, is that the defendant's ability to remove his stayed, along with everything else, until such time as the stay is modified or interpreted or removed or released. And so I'm going to reserve 58 seconds for rebuttal, and thank you all so much. Ms. Davis. May it please the Court. I'm Harold Davis on behalf of the appellee, Marconi, PLC. This case really presents two relatively straightforward issues, but it also represents an opportunity to clarify an issue that's been in flux in this jurisdiction for a long time, namely whether the first-filed or later-filed, last-filed rule for removal purposes should apply in this jurisdiction. Well, how do we have a record to make that decision? I mean, I for one would much rather have Judge Breyer make that decision in the first place and grapple with an issue of first impression that's kind of complicated rather than try to mess with it ourselves. I agree, Your Honor. There was not a developed record on that particular issue. It was raised in the briefs and Judge Breyer ---- So why shouldn't we remand to Judge Breyer on that issue and let him sort it out and make some findings, let him make the first stab at the law? Well, there were implicit findings, and as was brought up in the appellee's brief is that there were implicit findings that there was jurisdiction over the matter, which is the reason why Judge Breyer dismissed it. And this Court has allowed under previous precedent to enforce those implicit rulings, namely that there was timely removal within the 30-day time period. I know we are allowed to, but being a devout coward, why should I want to in the first instance? Well, and while the Court doesn't necessarily have to reach the issue of the first-filed or later-filed rule to resolve this case, the real issue is whether or not the district court had jurisdiction to begin with at all. And there's no dispute in this case that diversity jurisdiction exists. The plaintiff in their letter brief, in fact, filed at the Court's request, admitted that the amount in controversy was over $75,000. I don't think there's any question at all about that. But if it were untimely removed, or if Mr. Murphy is correct that the 304 order precluded removal, then the fact that there's diversity wouldn't matter. Well, the record that is apparent, and certainly with the hearing transcript, does deal with the Rule 304 order and whether Judge Breyer determined that that order applied to his court. And he quite clearly said that it did, and distinguished Section 304, Rule 304 of the Bankruptcy Court, as opposed to 362. The fallacy of the arguments of the appellant is that they try to sort of make these two sections of the Bankruptcy Code the same, that the 362A stay, this cooling-off period, somehow equates to a Rule 304 order. As Judge Breyer rightfully noted, those rules serve entirely different purposes. The 362A stay was created for a cooling-off period to prevent sort of a rush to the bankruptcy estate. The 304 order, on the other hand, is to protect a resolution that has already been in place, in this case, the scheme of arrangement that had been determined in London. So, again, like I said, the two issues of this case are whether jurisdiction exists. There really is no dispute on diversity of jurisdiction that the Court had the jurisdiction to hear this case. To speak to the second issue that the Court had really asked us to focus on, and that's whether or not the New York subsequent action should have any effect on this panel's decision in this case, and the appellee would submit that it does not, and there are various reasons for that. The first is, is that this panel sits in a limited review of the district court's opinion, and that review is based on the record that was in front of Judge Breyer at the time. And Judge Breyer had no knowledge of the subsequent rulings of the New York Court. The appellant never brought those issues to Judge Breyer. As Your Honor pointed out, they did not file a Rule 60 motion to have it reconsidered. Also, it would be fruitless because of the invited error aspect in this case. The invited error is that the plaintiffs agreed to the scope. They conceded in both their briefs and in the oral argument that the scope of the order prevented them. Now, I have a little trouble reading what they said that way because it's typical you're going to try to focus on something. They were focusing on a jurisdiction issue and say, you know, for this purpose. I think that's exactly what they said. For this purpose, we concede that the injunction exists and it's authentic. It's real. I think that their argument went a little bit further because if you look at their opposition to the motion to dismiss, indeed, their argument at trial was just that this Court doesn't have jurisdiction for purposes of inciting case law that cited 362 of the Bankruptcy Code saying that the defendants didn't have a right to remove in any respect. And Judge Breyer soundly rejected that on firm footing, saying that, no, those cases are all in a posit, that those cases deal with the 362A stay and there are various reasons why. There are policy reasons why we wouldn't want to enforce that either. I mean, the cases that are cited by the appellant are cases that protect the debtor. They toll the timing for removal. And they're for the purposes of protecting the debtor and the bankruptcy estate, whereas in this case, it was the debtor that moved for removal to get this case resolved quickly. And that's what happened in this case. So I'll submit it on the papers unless you have any other questions. Okay. Thank you, Mr. Davis. Mr. Murphy. Yes. Your Honors, it is black letter law, it's textbook law, that if you challenge an injunction, you cannot challenge it by disobeying it. You must obey it and you challenge it in the court that issued it. That's the way that you challenge an injunction. And we cited that case law to the New York court. We haven't cited it in this brief because it didn't come up until the letter brief, but I can give you the case. You all know it. Not having cited it before, I'm not going to unless you invite me to. But that's the black letter law. So there's no question that we proceeded as we had to proceed.  So the question is, what does Judge Bernstein's order mean? Did he change the meaning? I submit he did not. He says in his order, the 304 injunction did not bar commencement of the California action. Past tense. It doesn't mean he found you didn't have notice of it. There you go. Well, yes, there you go, but that doesn't interpret the breadth of the injunction, which was the focus to Judge Breyer. I have to say that I think it does because the injunction did have a provision for notice by mail to people who the defendant was aware were possible claimants and they didn't provide the notice by mail in accord with the order. They didn't comply with the order and Bernstein was the one who had to find that. Thank you. Okay. Thank you very much, counsel, for your argument. Both of you, the matter just argued will be submitted and because the court needs to reconstitute itself, we will take a very short recess.
judges: Fletcher, Rymer, Duffy